CITYFED FINANCIAL
CORP., Plaintiff,

v.

FEDERAL HOME LOAN BANK BOARD,
Federal Savings & Loan Insurance Corporation, George S. Mann, Unicorp
American Corporation and Unicorp
Canada Corporation, Defendants.

Civ. A. No. 85–2306.

United States District Court,
District of Columbia.

Aug. 14, 1985.

James H. Schropp, Robert E. Juceam, Stephen Lew, Robert H. Ledig, Fried, Frank, Harris, Shriver & Jacobson, Washington, D.C., for plaintiff.

Scott B. Schreiber, A. Patrick Doyle, Robert N. Weiner, Arnold & Porter, Washington, D.C., and Steven M. Barna, Kenneth B. Forrest, Louis J. Barash, Wachtell, Lipton, Rosen & Katz, New York City, for Unicorp defendants.

William K. Black, Denise Z. Field, James T. Lantelme, Federal Home Loan Bank Bd., Washington, D.C., for Federal Home Loan Bank Bd. and Federal Savings and Loan Ins. Corp., Norman H. Raiden, Gen. Counsel, Ralph W. Christy, Deputy Gen. Counsel, Washington, D.C., of counsel.

## MEMORANDUM

OBERDORFER, District Judge.

### I.

Plaintiff CityFed Financial Corp ("CityFed") is a publicly held savings and loan holding company incorporated under Delaware law with total assets in excess of $7 billion. Defendants Federal Home Loan Bank Board ("Board") and the Federal Savings and Loan Insurance Corporation ("FSLIC") are agencies of the United States Government. Defendant George S. Mann ("Mann"), an alien residing in Can-

ada, is chairman of the board of directors and a controlling person of defendants Unicorp Canada Corporation ("UCC") and Unicorp American Corporation ("UAC"), respectively a Canadian management and investment holding company and a Delaware corporation engaged in direct and indirect investment in the United States. Mann, UCC, and UAC are collectively referred to herein as "Unicorp." Unicorp currently owns approximately 13 percent of CityFed shares (including common stock and convertible preferred stock), and seeks to increase its ownership up to 24.99 percent of shares outstanding.

The Board is the operating head of the FSLIC. As such, it is empowered to administer the provisions of the Change in Savings and Loan Control Act of 1978 ("CSLCA") and the Savings and Loan Holding Company Amendments of 1967 to the National Housing Act ("SLHCA").[1] CityFed claims that the procedures followed by the Board in processing a "Notice in Change of Control" ("Notice") filed pursuant to the CSLCA by Unicorp in connection with its acquisition of CityFed shares were inadequate. CityFed further contends that these deficiencies invalidate the Board's June 28, 1985 determination[2] that the period for review of the Notice had expired and that Unicorp could therefore proceed with its proposed acquisition of additional CityFed stock. As a result, CityFed claims, the Board has in effect authorized Unicorp to acquire control of CityFed without adequately investigating allegations that Unicorp has a record of mismanagement and misconduct which, if repeated after gaining control of CityFed, would seriously injure CityFed's depositors and the public generally.

An Order entered August 6, 1985 invalidated the June 28, 1985 determination by the Board, which determination had the effect of authorizing defendant Unicorp to acquire additional shares of plaintiff CityFed.[3] That Order referred to a Memorandum to be filed. This is that Memorandum.

The CSLCA, the controlling statute in this case, requires a person acquiring a substantial number of shares in a savings and loan institution such as CityFed to file a prescribed notice.[4] If the Board fails to

---

1. In this Memorandum, descriptions of actions taken by "the Board" refer more precisely to actions taken by Board staff acting under authority delegated to it by the Board pursuant to 12 C.F.R. § 563.18–2(1) (1985).

2. As expressed in the June 28, 1985 Letter from William J. Schilling, Director, Office of Examinations and Supervision, Federal Home Loan Bank Board, to Thomas J. Haggerty, Esq. A.R. 010000.

3. On July 19, 1985, this action came before the Court for a hearing on plaintiff's application for a temporary restraining order. On July 22, 1985, the Court granted plaintiff's application, and on July 30, 1985, a hearing was held on plaintiff's motion for a preliminary injunction. Subsequently, by Order dated July 30, 1985, the Court extended the temporary restraining order to August 10, 1985 to preserve the status quo pending an expeditious adjudication of the merits. After filing briefs, exhibits and affidavits, and making extensive oral arguments, the parties on August 2, 1985 submitted this matter for decision on the merits.

4. The pertinent part of the statute provides that: [n]o person acting directly or indirectly or through or in concert with one or more other persons, shall acquire control of any insured institution through a purchase [note omitted], assignment, transfer, pledge, or other disposition of voting stock of such insured institution unless the Corporation [here the Board] has been given sixty days' prior written notice of such proposed acquisition and within that time period the Corporation has not issued a notice disapproving the proposed acquisition or extending up to another thirty days the period during which a disapproval may issue. 12 U.S.C. § 1730(q)(1) (1978).

Section 1730(q)(6) details the requirements of such notice, indicating that a notice should contain seven identified categories of information, including, among others, the identity, business background and experience of the potential acquirer; the assets and liabilities of the proposed acquiror and the terms and conditions of the proposed acquisition. 12 U.S.C. § 1730(q)(6)(A)–(G). Beyond that, the notice must include "[a]ny additional relevant information in such form as the Corporation may require by regulation or by specific request in connection with any particular notice," 12 U.S.C. § 1730(q)(6)(H), thus giving the Board the ability to obtain additional information relevant to consideration of the notice.

disapprove the acquisition within sixty days after the acquirer files a notice deemed "sufficient", the acquirer may proceed.

The Board has promulgated regulations to implement the CSLCA's provisions. These regulations delegate to the Board's staff responsibility for determining when a notice is complete as well as authority to terminate a review period by declaring an intent not to disapprove an acquisition.[5] The Board has reserved to itself authority to disapprove an acquisition.[6] Other regulations provide in substance that the 60-day review period will *commence* at such time as the Board has received a notice which it deems sufficient to satisfy the requirements of 12 C.F.R. § 563.18–2(e)(1). That regulation provides that a notice "shall not be deemed sufficient unless it includes all of the information required by the form prescribed by the Corporation, and any additional relevant information as the Corporation may require by specific request in connection with any particular notice." 12 C.F.R. § 563.18–2(e)(1) (1985).[7]

On October 1, 1984, Unicorp filed a change in control notice regarding CityFed with the Board pursuant to the CSLCA requesting authorization to acquire up to 24.99 percent of CityFed common stock. When the Board (actually the Board's staff acting with delegated authority) rejected the notice as incomplete, Unicorp filed "amended notices" on November 1, 1984, A.R. 011345–011347; January 18, 1985, A.R. 010801–010802; and April 18, 1985, A.R. 010552–010561. At the Board's spe-

cific request, Unicorp also filed an executed "Stipulation and Undertaking" relating to the proposed acquisition on June 27, 1985.

From time to time during this same period, CityFed submitted to the Board information and allegations relating to Unicorp's past practices and present intentions. The Board included much of this information in the record of its proceedings. In general, CityFed questioned whether Unicorp met appropriate standards of competence, experience, and integrity suggested by the CSLCA and urged the Board to disapprove Unicorp's notice, as authorized by 12 U.S.C. § 1730(q)(7).[8]

In the months that followed the filing of the October 1, 1984 Notice, the Board staff notified Unicorp several times that the Notice as submitted and amended did not in the view of the staff satisfy the requirements of Board regulations, and as a result, the 60-day review period would not commence.

The first such letter was dated October 9, 1984. A.R. 011351. A second letter, dated December 31, 1984, requested further information from Unicorp and stated that "[u]pon the filing of this required information, a determination will be made as to whether the Notice, as amended, is sufficient for purposes of commencing the 60-day period for review." A.R. 010803. On March 8, 1985, the Board staff again advised Unicorp that it required additional information, that the Notice was not deemed complete and that the 60-day peri-

---

5.  *See* 12 C.F.R. § 563.18–2(1) (1985).

6.  *See* 12 C.F.R. § 563.18–2(k) (1985).

7.  12 C.F.R. § 563.18–2(e)(3) also states in part: *Receipt of Notice; effect.* The period for Corporation review of any proposed acquisition will commence upon receipt by the Corporation of any notice substantially complying with the provisions of paragraph (e)(1). *The Corporation will send a letter of acknowledgement to an acquiring person indicating the date of receipt of a notice deemed to be sufficient or specifying the reasons why a notice is insufficient.* After the Corporation notifies the acquiring person that the notice is sufficient, the Corporation may subsequently make a determination that additional infor-

mation is required for its review of the notice, and it shall notify the acquiring person that the notice is insufficient. *In such case the period for Corporation review will be deemed to commence again in its entirety upon the receipt of the additional information.* [Emphasis added.]

8.  12 U.S.C. § 1730(q)(7) lists certain circumstances under which the Board may disapprove a proposed acquisition, including (D): "[when] the competence, experience, or integrity of any acquiring person or any of the proposed management personnel indicates that it would not be in the interests of the depositors of the institution or in the interest of the public to permit such person to control the institution."

od would not commence until the additional information requested was provided. A.R. 010587–010591.

By this March 8, 1985 letter, the Board staff also requested that Unicorp execute a "Stipulation and Undertaking" (the "Stipulation") along the lines of a draft the staff submitted to Unicorp. The letter stated that the staff would accept the execution of the Stipulation "in lieu of requiring the immediate submission of a detailed business plan which conforms to the requirements of [an earlier communication]." A.R. 010588. Significantly, the staff suggested that Unicorp attach the executed Stipulation under cover of an amended Notice. Thereafter, and up until June 27, 1985, the staff and Unicorp negotiated about the Stipulation. During the course of these negotiations, Unicorp filed two unexecuted, proposed Stipulations. A.R. 010583; A.R. 010545.

On June 17, 1985, the Board staff advised Unicorp in writing that it was extending, for ten days, the 60-day period allowed for review of a completed Notice. A.R. 010041. The Board took this action without any indication in the administrative record that they had *ever* notified Unicorp that its Notice had been deemed substantially complete.[9] The letter merely described the Notice as "last amended on April 18, 1985." On that date counsel for Unicorp wrote to the Board to transmit an executed amendment No. 3 to the Notice. A.R. at 010566. Unicorp stated in this letter that "[the] amendment responds to the inquiries in your letter of March 8, 1985, *except that no Stipulation and Un-*

*dertaking is filed herewith."* A.R. at 010566 (emphasis added).

On June 27, 1985, Unicorp finally submitted an executed Stipulation and Undertaking to the staff. The June 27 Stipulation and Undertaking, similar in many respects to earlier versions, generally provided that Unicorp must seek approval of the Supervisory Agent of the Federal Home Loan Bank of New York before it could: (1) materially alter or attempt to materially alter CityFed's operations or business; (2) effect or attempt to effect a corporate reorganization of CityFed; or (3) seek to control the election of a majority of the Board of Directors. A.R. 010005A–010005B. On the following day, June 28, 1985, the Board staff notified Unicorp by letter that the 60-day period for review of its Notice had expired and, accordingly, Unicorp could proceed to acquire additional shares of CityFed. A.R. 010000.

## II.

CityFed contends here that the June 27, 1985 Stipulation and Undertaking constituted "additional information ... required for review of the notice" under 12 C.F.R. § 563.18–2(e)(3), and as such its filing should have caused the 60-day review period to recommence, thus precluding Unicorp from further acquisitions for 60 days from June 27 or until the Board announced an intent not to disapprove the acquisitions.[10] Plaintiff further contends that:

(1) a May 23, 1985 submission which it made to the Board[11] and an inquiry made by the Board on June 25, 1985 to Canadian authorities[12] produced "additional informa-

---

**9.** Such a notification would have triggered commencement of the 60-day review period under Board regulation 12 C.F.R. § 563.18–2(e)(3) (1985). *See* discussion *supra* at p. 1125, n. 7.

**10.** As is authorized by 12 C.F.R. § 563.18–2(g), which states that "[p]rior to the expiration of the 60-day review period or any extension thereof, the [Board] may notify the acquiring person in writing of ... [i]ts intent not to disapprove the proposed acquisition."

**11.** CityFed, in this May 23 submission, provided additional information supplementing earlier submissions relating to George Mann and Uni-

corp and their activities in connection with Unity Bank of Canada. The May 23 letter presented allegations that George Mann was instrumental in the approval of loans to a particular borrower, which loans were chronically and seriously under-collateralized. A.R. at 010052–010455.

**12.** In its June 25 letter, the Board requested information from Canadian authorities regarding George Mann and Unicorp and their activities in connection with Unity Bank of Canada. *See* Letter from Julie L. Williams, Associate General Counsel, Director, Corporate and Secu-

tion ... required for its review of the notice" which, under 12 C.F.R. § 563.18–2(e)(3) should have recommenced the review period;

(2) the Board erred by initially commencing to process Unicorp's October 1, 1984 Notice as Unicorp was allegedly already in violation of Board regulations;

(3) the Board should not have delegated the processing of this particular notice to staff;

(4) the Board's action constituted the granting of a license which necessitated a prior hearing;

(5) the Board was required to hold a hearing to consider the applicability of the SLHCA to Unicorp's actions; and

(6) the Board's failure to disapprove the Notice despite the information supplied to it by CityFed indicated inadequate investigation, constituted arbitrary and capricious action, and was an abuse of discretion and otherwise not in accordance with law.

The Board contends in opposition that:

(1) plaintiff is without standing to bring this action;

(2) the June 27, 1985 Stipulation and Undertaking did not constitute "additional information ... required for review of a notice" under 12 C.F.R. § 563.18–2(e)(3);

(3) the Court lacks authority to afford the relief against the Board sought by the plaintiff;

(4) plaintiff does not have a private right of action to seek injunctive relief under the CSLCA or the SHLCA;

(5) the matters of which plaintiff complains are committed to agency discretion by law and therefore not amenable to judicial review;

(6) the Board's delegation to staff was authorized by regulation;

(7) no hearing in regard to the notice was required under the SLHCA or § 558(c) of the Administrative Procedure Act; and

(8) the Board's processing and ultimate determination with respect to the Notice did not constitute arbitrary and capricious action.

Defendant Unicorp echoes the Board's contentions. Unicorp also contends that the CSLCA does not grant plaintiff a private cause of action for injunctive relief against Unicorp, and suggests further that if there is jurisdiction to review the Board's determination, it lies with the Court of Appeals.[13]

### III.

#### A.

■ As a threshold issue, defendants challenge plaintiff's standing to bring this action. This defense must fail. Plaintiff is a party aggrieved and adversely affected by the Board staff's determination and its alleged failure to fulfill its duty under the CSLCA to protect a savings and loan institution and its depositors from a threatened takeover. The Administrative Procedure Act provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702 (1976).

■ The plaintiff's allegations meet Article III's requirement that plaintiff show that it has personally suffered threatened injury as a result of the putatively illegal conduct of defendant and that such injury is " 'likely to be redressed by a favorable decision.' " *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982), *quoting Simon v. Eastern Ken-*

---

rities Division, to William Kennett, Inspector General of Banks, Department of Finance (June 25, 1985). A.R. 010039.

**13.** The Board apparently disagrees with Unicorp on this issue, having stated on oral argument that "we believe that as with other Bank Board

actions and other agency actions that aren't specifically addressed in the ... agency statute itself, the route for review of that action would be under the APA directly in the district court." Tr. of Hearing, July 19, 1985 at 38.

**1128**

*tucky Welfare Rights Org.*, 426 U.S. 26, 38, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). A decision for the plaintiff sets aside the Board's assumption that the review period ended June 27, 1985, and makes it unlawful for Unicorp to acquire more CityFed stock at least until August 26, 1985, or until the Board has acted pursuant to 12 C.F.R. § 565.18–2(g)(2). Plaintiff also meets the prudential requirement of standing that the asserted interests fall within the zone of interests to be protected by the statute in question. *Id.* 454 U.S. at 475, 102 S.Ct. at 760. As our Court of Appeals has recently reiterated:

> The zone of interests adequate to sustain judicial review is particularly broad in suits to compel federal agency compliance with law, since Congress itself has pared back traditional prudential limitations ... by the Administrative Procedure Act, which affords review to any person "adversely affected or aggrieved by [federal] agency action within the meaning of a relevant statute."

*FAIC Securities, Inc. v. United States*, No. 84–5408, slip op. at 8 (D.C.Cir., July 26, 1985) (citations omitted).[14]

The CSLCA is ultimately designed to serve the public interest by protecting depositors in savings and loan institutions,[15] and the depositors clearly fall within the zone of interest contemplated by the statute. The institution has standing in these circumstances because of its fiduciary responsibility to its depositors. *See GAF Corp. v. Milstein*, 453 F.2d 709, 719–21 (2d Cir.1971), *cert. denied*, 406 U.S. 910, 92 S.Ct. 1610, 31 L.Ed.2d 821 (1972). As the Court noted in *FAIC Securities, supra:*

"[w]e have been unable to find any case in which the Supreme Court has relied upon the plaintiff's failure independently to meet the zone of interests tests as the basis for its refusal to accord standing for the assertion of third-party rights." *Id.* at 11.

### B.

Since plaintiff has standing to challenge the Board's action under the Administrative Procedure Act and the relief granted herein should prevent further acquisitions by private defendants[16] until after 60 days from June 28, 1985, or until the Board has pursuant to 12 C.F.R. § 563.18–2(g)(2) announced its intent not to disapprove the acquisition, it is unnecessary to resolve the issue of whether plaintiff has a private cause of action directly against Unicorp. Accordingly, the August 6 Order granted Unicorp's motion to dismiss the complaint against the Unicorp defendants.

### IV.

■ Having resolved the threshold challenge to plaintiff's standing to bring this action, it is appropriate to explore the statutory and regulatory framework and its application to the contentions of the parties. The administrative record vindicates plaintiff's contention that the Board's June 28, 1985 determination that the 60-day period for review had expired was erroneous as a matter of law. 12 C.F.R. § 563.18–2(e)(3) mandates that the Board *"will"* send a letter of acknowledgement indicating the date of receipt of a notice deemed to be sufficient (emphasis added). That regulation also mandates that when a notice has

---

**14.** In which the Court upheld over appellant Federal Home Loan Bank Board's challenge the standing of deposit brokers to challenge regulations promulgated by the FDIC and the Bank Board.

**15.** The legislative history clarifies Congress' intent in the CSLCA to provide regulatory agencies with additional authority to control "fly-by-night" takeovers of financial institutions. *See* 124 Cong.Rec. 33,308 (1978). A primary objective of the CSLCA was to "enhance and maintain public confidence in the savings and loan industry by preventing identifiable serious ad-

verse effects resulting from ... inadequate financial support, or unsuitable management in these institutions." 44 Fed.Reg. 10,501–10,502 (1979).

**16.** In reaching this conclusion the Court relies upon the representations made by counsel for Unicorp that "No showing has been made that [Unicorp] would act in a manner inconsistent with the law...." Letter from Scott B. Schreiber to Robert E. Juceam dated August 5, 1985, at p. 2. Such a showing could, on short notice, result in further proceedings and orders.

been determined to be insufficient, the 60-day period for review shall commence *"in its entirety upon the receipt of the additional information."* 12 C.F.R. § 563.18-2(e)(3) (1985) (emphasis added).

On several occasions between October 1, 1984 and June 28, 1985, the Board staff notified Unicorp that its Notice was insufficient.[17] On the last such occasion, March 8, 1985, the staff advised Unicorp in writing that the Notice was "determined to be insufficient" and that "[u]pon *the filing of [specific requested information], a determination will be made as to whether the Notice, as amended, is sufficient for purposes of commencing the 60-day period for review."* A.R. 010587 (emphasis added). Among the specifically requested items of information was the executed and notarized Stipulation and Undertaking which the staff was willing to accept "in lieu of requiring the immediate submission of a detailed business plan." This *executed* Stipulation was not received by the Board until June 27, 1985.

The transaction detailed by Unicorp's original and interim notices (which on March 8, 1985 the Board found to be incomplete without an executed Stipulation and Undertaking) is materially different from the transaction limited by the execution of the June 27, 1985 Stipulation and Undertaking. The statute requires the Board to obtain a business plan [18] from the acquirer which would, among other things, make specific representations as to how the acquirer would conduct itself. The Stipulation and Undertaking was proposed by the Board, in lieu of a business plan, to limit Unicorp's prerogatives with respect to assumption of control. It could only take critical steps after notifying the Board. The significance of this commitment is evidenced by Unicorp's resistance to making it. In his April 18, 1985 letter to the Board,

for example, Unicorp's counsel stated that the enclosed amendment "responds to the inquiries in your letter of March 8, 1985 *except that no Stipulation and Undertaking is filed herewith."* A.R. at 010566 (emphasis added). The fact that an executed Stipulation and Undertaking had not been filed in an amended Notice and that its contents were still the subject of debate at least as late as April 24, 1985, is demonstrated by an internal Board memorandum of that date, in which it is stated that "[t]he matter of the Stipulation and Undertaking *to be signed* by the Applicants *has been under negotiation* since our original proposal was sent to the Applicants on March 8, 1985." [19] Significantly, this memorandum stated the staff's belief that "it is important that any revisions to the proposed Stipulation and Undertaking be carefully analyzed to determine the potential impact of such revisions on the effectiveness of the document as a supervisory tool." *Id.*

Unicorp's resistance to the making of this significant commitment is further demonstrated by a May 14, 1985 letter from Unicorp's counsel to the Board, in which Unicorp transmitted yet another *proposed* Stipulation and Undertaking which, like its predecessors, was not an executed document. A.R. at 010545. The administrative record clarifies that Unicorp only executed and filed the final Stipulation and Undertaking after the staff purported to extend the review period for ten days. An obvious implication is that the staff could have extended the review period indefinitely until it had an executed Stipulation and Undertaking in hand.

In sum, the Board's letter of March 8, 1985 explicitly represented that the Board considered the submission of an executed Stipulation and Undertaking to be a critical

---

**17.** *See* discussion *supra* at p. 1125.

**18.** 12 U.S.C. § 1730(q)(6) mandates that a notice *shall* contain *inter alia* "[a]ny plans or proposals which any acquiring party making the acquisition may have to liquidate the institution, to sell its assets or merge it with any company or to make any other major change in its business or

corporate structure or management." 12 U.S.C. § 1730(q)(6)(E) (1978).

**19.** Memorandum from Edward J. O'Connell, III, Assistant Director for Regional Operations, to William J. Schilling, dated April 24, 1985. A.R. at 010551 (emphasis added).

aspect of Unicorp's Notice, without which it would not be sufficient to commence the 60-day period for review. The Board cannot now properly take the position that the Notice was "sufficient" as of April 18, 1985, when Unicorp filed an amended Notice in which it specifically declined to include the executed Stipulation required by the March 8 letter.

The conclusion that the Board was not on April 18, 1985 satisfied that it had collected all the information required for its review is bolstered by the Board's letter of June 25, 1985, in which the Board requested from Canadian authorities certain information regarding George Mann and Unicorp.[20] The holding that the 60-day review period did not commence on April 18, 1985 does not, however, rest on *this* request for additional information. The regulations are unclear as to whether additional information received by the Board after requests to sources *other than the acquirer* will cause the review period to recommence. The June 25 request, however, does support the conclusion that the Board was not satisfied that the information in its possession on April 18, 1985 was sufficient for it to complete its review of Unicorp's Notice.

## V.

The Board argues that the 60-day review period as imposed by Congress and implemented by regulation was only intended: (1) to put a limit on the time during which the Board could hold an acquisition in suspense; and (2) for the convenience of the Board. Thus, presumably, when the staff was satisfied that a previously incomplete notice had been completed, the staff could determine that the review period had ended and thereby clear the track for consummation of the transaction. Congress formulated this statute, however, before the Board adopted the regulation which delegated to the staff authority to determine that a notice was complete. At argument, counsel for the Board indicated that the

Board itself had no formal knowledge of this very large transaction or of the staff's processing and disposition of the Notice. For ought that appears in the record, the Board itself remains unaware of the staff's disposition, despite vigorous efforts by CityFed to attract the Board's attention. As a practical matter, the Court's determination that the 60-day review period *commenced*, rather than expired, on June 27, 1985, creates at least an opportunity for the Board itself to look into the staff's treatment of a potential shift in control of a $7 billion savings and loan holding company and a contest which has generated a significant amount of attention.

Moreover, a ruling that the 60-day review period recommenced upon the execution and filing of the June 27, 1985 Stipulation and Undertaking does not tie the hands of the staff or the Board. It is recognized that the Board's regulations do not require that the staff allow a full sixty days for review of a notice *once it is complete*. 12 C.F.R. § 563.18–2(g)(2) indicates that the Board may, prior to the expiration of the 60-day review period, notify the acquiring person in writing of its intent not to disapprove the proposed acquisition. The letter of June 28, 1985, however, was not by its terms such a notice of intent. Instead, the letter represented that the period for review had "expired." That conclusion was inconsistent with (1) the staff's March 8, 1985 request for, *inter alia,* an executed Stipulation and Understanding without which the Notice would not be deemed sufficient to *commence* the 60-day review period, A.R. 010587–010588, and (2) the fact that the executed Stipulation and Understanding was not received until June 27, 1985.

If it is determined administratively that the recommenced review period should be shortened, the staff is free to announce pursuant to 12 C.F.R. § 563.18–2(g)(2) that it does not intend to disapprove the acquisition, recognizing, of course, that such a

---

**20.** Letter from Julie L. Williams, Associate General Counsel, Director, Corporate and Securities Division, to William Kennett, Inspector General

of Banks, Department of Finance (June 25, 1985), A.R. 010039.

determination *might* be reviewable under an arbitrary and capricious standard. The Court's holding clarifies that the staff must either conform strictly to the 60-day review period upon completion of a notice as required by the statute and regulations, or else openly announce its determination that the transaction should not be disapproved. This should remove any temptation to attempt to avert a risk of judicial review by declaring the notice period ended without having announced that it had begun.

### VI.

In view of the finding that the June 27 Stipulation and Undertaking constituted additional information which recommenced the 60-day review period, it is unnecessary to resolve whether plaintiff's May 23 submission and the Board's June 25 request to Canadian authorities also constituted such additional information. Similarly, in view of this disposition of this matter, it is unnecessary and would be premature to address plaintiff's contention that the Board's failure to disapprove the Notice in spite of the information supplied to it by CityFed indicated inadequate investigation and constituted arbitrary and capricious action not in accordance with law. It will be time enough to deal with this issue when and if the Board determines and announces pursuant to 12 C.F.R. § 563.18–2(g)(2) that it has no intention to disapprove further acquisitions by Unicorp.

It is also unnecessary, in the absence of such a determination, to reach plaintiff's claims that the Board was required under the Administrative Procedure Act or the SLHCA to hold hearings on this matter. Furthermore, plaintiff's contention that the Board should not have delegated the processing of this Notice to staff is without merit. The regulations expressly provide for such delegation and neither the statute

nor the regulations intimate that "more significant" notices are not appropriate for delegation. *See* 12 C.F.R. § 563.18–2(1) (1985). As has been discussed, however, the Court's finding that the 60-day review period *commenced,* rather than expired, on June 27, 1985 provides additional time in which the Board itself has an opportunity to consider the determination made by staff on this significant transaction.

Plaintiff's contention that the Board erred in commencing to process this Notice in the first instance is similarly without merit. The regulations provide that Board staff are authorized to "[d]etermine [the] sufficiency of a notice for the purpose of commencing or recommencing the review period under paragraph (e)(3)," 12 C.F.R. § 563.18–2(1)(vi) (1985). It cannot be overemphasized, however, that the Board must abide by its own regulations relating to procedures to be followed in making that determination [21] and conducting its review. Board staff on March 8, 1985 advised Unicorp that its Notice was incomplete and explicitly represented that the Notice would not be sufficient to commence the review period without specific requested information which included the executed Stipulation and Undertaking. The administrative record contains *no* evidence that a letter acknowledging the sufficiency of the amended Notice was *ever* sent as required by § 563.18–2(e)(3). Instead, the staff's letter of June 17, 1985 skipped a step and purported to *extend* the 60-day review period (which by Board regulations had not yet commenced) an additional ten days. Thus, the Board's own regulations and actions require the conclusion in this case that the Notice was not complete at least until an executed Stipulation and Understanding was on file, at which time under the plain terms of 12 C.F.R. § 563.18–2(e)(3) the 60-day review period recommenced. For this reason, the Board's contention that its con-

---

**21.** 12 C.F.R. § 563.18–2(e)(1) (1985) (emphasis added) states that "[a] notice ... *shall* not be deemed sufficient unless it includes *all* of the information required by the form prescribed by the Corporation *and any additional information [here the executed Stipulation] as the Corporation may require by specific request in connection with any particular notice.*"

duct with respect to this Notice was "committed to agency discretion by law," 5 U.S.C. § 701(a)(1), and therefore not amenable to judicial review, must fail.

As the Supreme Court stated in *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962): "[e]xpert discretion is the lifeblood of the administrative process, but 'unless we make the requirements for administrative action strict and demanding, *expertise*, the strength of modern government, can become a monster which rules with no practical limits on its discretion,'" (*quoting New York v. United States*, 342 U.S. 882, 884, 72 S.Ct. 152, 153, 96 L.Ed. 662 (1951) (dissenting opinion) ).[22]

■ An agency's own regulations provide such "practical limits on its discretion." In this case, the administrative record demonstrates both (1) an agency's failure to follow *its own regulations relating to appropriate procedures*, and (2) an agency determination that implicitly and without adequate explanation contradicts its earlier findings. In such circumstances, the agency cannot attempt to avoid judicial review under 5 U.S.C. § 702 with the claim that the final decision made by the agency is one committed to its discretion by law.

In view of the disposition of this matter detailed in the Order of August 6, 1985, it would be premature to consider the question of whether a notice of intent not to disapprove the acquisition would be subject to judicial review, and, if so, whether issuance of such a notice in this case would be arbitrary, capricious and contrary to law.

For the foregoing reasons the Order of August 6, 1985, granted a declaratory judgment for plaintiff, denied its prayer for equitable relief, and dismissed the complaint as against Unicorp.

---

**22.** These principles were reaffirmed in *Motor Vehicles Manufacturers Association v. State Farm Mutual Automobile Insurance Company*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983), in which the Court stated that "[w]e have frequently reiterated that an agency must cogently explain why it has exercised its discretion in a given manner [citations omitted]; and we reaffirm this principle again today." *Id.* at 48–49, 103 S.Ct. at 2869–2870.