560 A.2d 248

**HOME UNITY SAVINGS AND LOAN ASSOCIATION, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF BANKING, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 4, 1988.

Decided June 7, 1989.

Timothy F. Malloy, Alan J. Davis, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, for petitioner.

Paul S. Diamond, David H. Pittinsky, Douglas M. Lurio, Richard J. Bortnick, Dilworth, Paxson, Kalish & Kauffman, Philadelphia, for intervenor, Samuel Rappaport.

Hugh A. Benson, Chief Counsel, David E. Shakespeare, Asst. Counsel, Harrisburg, for respondent.

Before BARRY, COLINS and SMITH, JJ.

OPINION

BARRY, Judge.

Home Unity Savings and Loan Association (Home Unity) appeals from an order of the Deputy Secretary of Banking (Deputy Secretary) approving the proposal of Samuel H. Rappaport (Rappaport) to acquire up to 25% of the outstanding shares of Home Unity's common stock.

Home Unity is a permanent reserve fund stock savings association. Rappaport was the beneficial owner of slightly less than 10% of its outstanding shares of common stock and wanted to increase his ownership. In compliance with Section 212(c) of the Savings Association Code (Code), Act of December 14, 1967, P.L. 746, *as amended,* added by the Act of April 9, 1982, P.L. 334 § 4, 7 P.S. § 6020–32(c), he filed an application with the Savings Association Bureau (Bureau) of the Department of Banking (Department) to acquire its written approval of his acquisition of up to 25% of the outstanding shares of Home Unity's common stock.[1] The Director of the Bureau, pursuant to Section 212(d) of the Code, 7 P.S. § 6020–32(d), gave Home Unity's board of directors a copy of the application and the documentation that accompanied it and invited it to submit any written comments or objections to the application.[2]

In response to Rappaport's application, Home Unity initially mailed to the Director of the Bureau, inter alia, clippings of newspaper and magazine articles concerning Rappaport and copies of court documents relating to litigation in which he had been involved. Later, it submitted a

1. Initially, Rappaport had filed an application to obtain the Department's approval of his acquisition of up to 100% of Home Unity's stock. Later, he filed an amended application seeking its approval of his acquisition of up to 25%.

2. The Department did, however, withhold from Home Unity biographical and financial information provided by Rappaport which it had determined should be kept confidential. It was authorized to do so under Section 212(d) of the Code, 7 P.S. § 6020–32(d).

written response to the application.[3] In that document, Home Unity asserted that Rappaport did not meet the standards of character and fitness established by Section 206(a)(4) of the Code, 7 P.S. § 6020–26(a)(4), and urged the Department to disapprove Rappaport's proposed acquisition.[4]

After reviewing the materials submitted by Rappaport and Home Unity, the staff of the Bureau recommended to the Deputy Secretary that Rappaport's proposed acquisition be disapproved. They concluded that Rappaport's reputation in the community—albeit one that was created by the media—did not justify the conclusion that he had the character and fitness to either command confidence of the community or warrant the belief that the business of Home Unity would be honestly and efficiently conducted. The Deputy Secretary, however, rejected this recommendation and approved the proposed acquisition subject to certain conditions which were designed to insure that Rappaport would be only a passive investor in Home Unity. Both Rappaport and Home Unity were notified of this decision by a letter dated January 22, 1988. This appeal by Home Unity followed.

In this appeal, Home Unity raises two issues for our consideration: (1) Did the Deputy Secretary make findings of fact and conclusions of law that would enable this Court to exercise our appellate review power; and (2) Is there substantial evidence on the record to establish that Rappaport's character and fitness command the confidence of the community and warrant the belief that the business of Home Unity will be honestly and efficiently conducted. Before, however, we can address these issues, we must first address challenges by the Department and/or Rappaport to

3. A letter written by counsel for Home Unity to the Director of the Bureau on December 14, 1987, indicates that there was also a meeting between representatives of Home Unity and employees of the Department.

4. The Department was required to determine whether Rappaport met the standards of character and fitness established by Section 206(a)(4) of the Code under Section 212(d) of the Code.

this Court's ability to review the Deputy Secretary's decision and to Home Unity's ability to challenge that decision.

The Department argues that the Deputy Secretary's order approving Rappaport's proposed acquisition is not an "adjudication", as defined in Section 101 of the Administrative Agency Law, 2 Pa.C.S. § 101. Accordingly, it contends that the order is not subject to judicial review. Under Section 702 of the Law, 2 Pa. C.S. § 702, a right of appeal is conferred on "[a]ny person aggrieved by an adjudication of a Commonwealth agency who has a direct interest in such adjudication. . . ."

■ Whether the Deputy Secretary's order is an "adjudication" is not, however, dispositive of whether that order is subject to review by this Court. We note that the final sentence of Section 212(e) of the Code, 7 P.S. § 6020–32(e), expressly provides that an order approving or disapproving the proposed acquisition of more than 10% of the outstanding shares of stock in a permanent reserve fund stock savings association is subject to review by this Court. Accordingly, we must reject the Department's argument that the Deputy Secretary's order is not subject to judicial review.

Rappaport, meanwhile, argues that the issues raised by Home Unity are not ripe for judicial resolution because the Federal Home Loan Bank Board (Bank Board) has yet to approve his acquisition of the additional shares of common stock in Home Unity [5] and because Home Unity's board of directors has not yet voted to permit such an acquisition.[6]

5. Under 12 C.F.R. § 563b.3(i)(3), it is the general rule that, for a period of three years following the date of the completion of the conversion of a federally insured savings and loan association from a mutual association into a stock association, no person can directly or indirectly offer to acquire or acquire the beneficial ownership of more than 10% of any class of an equity security of that association, without prior approval from the Bank Board, which is the operating head of the Federal Savings and Loan Insurance Corporation.

6. Under Home Unity's articles of incorporation, for a period of five years following the consummation of its conversion from a mutual association to a stock association, no person or persons acting as a group can directly or indirectly offer to acquire or acquire the benefi-

■ Home Unity's petition for review is directed to the appellate jurisdiction of this Court. This Court is authorized to hear appeals from *final* orders of most Commonwealth agencies. 42 Pa.C.S. § 763. The Department of Banking is a Commonwealth agency whose final orders are subject to review by this Court. A final order is usually one which ends the litigation or, alternatively, disposes of the entire case. *Pugar v. Greco*, 483 Pa. 68, 394 A.2d 542 (1978). In the present matter, the Deputy Secretary's order approving Rappaport's proposed acquisition of up to 25% of the outstanding shares of Home Unity's common stock terminated the proceedings before the Department on Rappaport's application to obtain that approval. Accordingly, it must be concluded that the decision from which Home Unity has appealed constitutes a final order of a Commonwealth agency. Therefore, this Court has the power to address the merits of Home Unity's appeal at this time.[7]

■ The Department and Rappaport both argue that Home Unity lacks standing to appeal the Deputy Secretary's order approving Rappaport's proposed acquisition of up to 25% of its issued and outstanding shares of common stock. While Section 212(d) of the Code provides for the right to appeal such a decision to this Court, it does not specify those persons who have standing to appeal it. In the absence of a specific statutory provision concerning standing, we are guided by the general rules of standing set forth in *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 464 Pa. 168, 346 A.2d 269 (1975). The core requirements of those rules are that the person claiming to have standing must have an interest in the challenged action which is greater than the abstract interest of the general citizenry in obtaining compliance with the law and

cial ownership of more than 10% of its common stock without prior approval of two-thirds of its board of directors.

7. What Rappaport really seems to be arguing is that Home Unity's petition for review should be dismissed because there is a possibility that the issues raised therein will become moot due to actions taken by the Bank Board of Home Unity's board of directors. Such a possibility does not, however, constitute grounds for dismissing a petition for review.

that there must be a direct and immediate causal connection between the challenged action and the harm asserted. *Id.*, 464 Pa. at 191, 346 A.2d at 280.

In its brief to this Court, Home Unity asserts that it has two interests in the Deputy Secretary's decision to approve Rappaport's proposed acquisition. The first is the maintenance of public confidence in the association and the second is the protection of the interests of its depositors and shareholders.[8] Assuming, arguendo, that, as a result of Rappaport's acquisition of an additional 15% of the outstanding shares of stock in Home Unity, Home Unity would lose the confidence of the public and that its depositors and shareholders would suffer pecuniary injury, they would, in the opinion of this Court, suffer direct, immediate and substantial injuries as the result of the Deputy Secretary's decision.

Such injuries would be substantial because they would constitute discernible harm to interests of Home Unity and its depositors and shareholders that are greater than the interest that they share with all citizens in procuring obedience with the law. They would constitute direct injuries because a reversal of the Deputy Secretary's decision would leave Rappaport unable to lawfully acquire more than 10% of the outstanding shares of stock in Home Unity and would thereby obviate the alleged injuries. Finally, they would constitute immediate injuries since the Code was adopted to protect against them. Specifically, it was adopted to provide for, inter alia, the maintenance of public confidence in savings associations and the protection of interests of owners of savings accounts. 7 P.S. § 6020–3. Section 212(d) of the Code, in fact, requires the Department, when deciding whether to approve an individual's proposal to acquire more than 10% of the outstanding shares of stock in a permanent reserve fund stock association to determine,

8. The Department questions the ability of Home Unity to assert the interests of its depositors and shareholders. We believe, however, that Home Unity can assert those persons' interests because of its fiduciary responsibility to them. *See CityFed Financial Corp. v. Federal Home Loan Bank Board,* 615 F.Supp. 1122, 1128 (D.D.C.1985).

inter alia, whether the proposed acquisition, its purposes and probable effects will be consistent with the purposes of the Code and whether the proposed acquisition will be prejudicial to the interests of the depositors and shareholders of the institution whose shares are to be acquired in the proposed transaction.

The Department and Rappaport contend that the harm which Home Unity asserts it and its depositors and shareholders will suffer as a result of Rappaport's acquisition of an additional 15% of the outstanding shares of its stock is speculative. They contend that, inasmuch as Home Unity has not shown that it or its depositors and shareholders have suffered any harm as the result of Rappaport's ownership of 10% of the outstanding shares of its stock, there is no reason to believe that they will suffer harm as the result of Rappaport's "mere" ownership of 25% of the outstanding shares of its stock. Such an argument is, in the opinion of this Court, specious.

Having concluded that the Deputy Secretary's decision is subject to review by this Court and that Home Unity has standing to request this Court to review that decision, we turn to the merits of the appeal.

█ Home Unity's dissatisfaction with the Deputy Secretary's decision to approve Rappaport's proposed acquisition stems primarily from its belief that the record contains no substantial evidence to support a conclusion that Rappaport's character and fitness are such as to command the confidence of the community and to warrant a belief that the business of Home Unity will be honestly and efficiently conducted. Unfortunately, it would appear that the Deputy Secretary has failed to render a decision which would enable this Court to address this contention of Home Unity.

As noted above, the Deputy Secretary advised the parties of his decision to approve Rappaport's proposed acquisition by a letter dated January 22, 1988. That letter reads as follows:

You are advised that the application of Samuel Rappaport to acquire up to 25% of the stock of Home Unity Savings and Loan Association is approved. The acquisition of the shares should be completed by January 22, 1989. If the shares are not acquired by that date, it will be necessary for Mr. Rappaport to either request an extension of time to acquire the shares or file a new Section 212 application depending on the circumstances at the time.

This approval is based upon the information contained in the Pennsylvania Department of Banking's Section 212 application itself as well as the information and representations contained in the contemporaneous applications to the Federal Home Loan Bank Board (FHLBB), including the approval to acquire more than ten percent of the outstanding stock and the rebuttal of the presumption of control. The Department of Banking considers the applications and filings with the FHLBB to be part of the Section 212 application.

Accordingly, the approval under Section 212 is based, in part, on the following representations made by Mr. Rappaport in his filings with the FHLBB:

(1) that Mr. Rappaport will not seek or accept representation of more than one director on the Board of Directors of Home Unity;

(2) that Mr. Rappaport will not have or seek to have a representative serve as chairman of the Board or executive committee, or as president or chief executive officer, of Home Unity;

(3) that Mr. Rappaport will not engage in inter-company transactions with Home Unity or its affiliates;

(4) that Mr. Rappaport will not solicit proxies with respect to any matter presented to the stockholders of Home Unity other than in support of, or in opposition to, a solicitation conducted by management;

(5) that, except as necessary solely in connection with his performance of duties as a member of Home Unity's Board of Directors, Mr. Rappaport will not attempt to influence the credit decisions or policies of Home Unity,

the pricing of services, any personnel decisions, the location of any office, dividend policies, decisions or policies as to the issuance, offering or exchange of securities, or attempt to exercise control or controlling influence over the management policies or business operations of Home Unity;

(6) that Mr. Rappaport will not seek to amend the articles of incorporation or bylaws of Home Unity, except that Mr. Rappaport may seek to amend the provision of the articles restricting ownership of more than ten percent of the shares. In the event that any of the representations of Mr. Rappaport made in his filings with the Department of Banking or the FHLBB, including the above, should change, it will be necessary for Mr. Rappaport to obtain written assurances from the Department of Banking that any such changes will not affect the approval granted in this letter.

In addition to the above letter, the Deputy Secretary, on January 27, 1988, prepared a memorandum which was placed in the Department's file on the Rappaport application. That memorandum reads as follows:

After having read the file with regard to the subject matter, I met with staff of the Savings Association Bureau on Thursday, January 21, 1988, for the purpose of discussing the application and in particular the Bureau recommendation to me. Representing the Bureau were Walter Brenneman, Warren Callaway and Michael Dougherty. Also in attendance were Hugh Benson and David Shakespeare. I had requested the attorneys to be present in order to provide me with their recommendations as to procedure and format after I make a decision on the application.

Bureau staff was of the opinion that the language of the statute was sufficient justification to deny the application. The language in question from the Code is that the Department should determine that the applicant 'has the character and fitness such as to command confidence of

the community.' After much discussion, it was determined that while Mr. Rappaport was a known personality in Philadelphia and that he was the owner of much of the real estate in center city Philadelphia, we did not know of any particular instances or circumstances in the recent past which would result in any problem or difficulties for the Savings Association which might result from the general public being aware of the fact that Mr. Rappaport was a substantial investor in the Association.

After thoroughly discussing the contents of the application and all other materials before us for consideration, I made the determination that the Department should not object to the proposed acquisition as planned by Mr. Rappaport. It was concluded that we would correspond with counsel for Mr. Rappaport and advise him of our determination.

Neither the letter of January 22, 1988 nor the memorandum of January 27, 1988 state necessary findings of fact required pursuant to Section 212(d) of the Code. In particular, there are no findings of fact that would be relevant to the issue of whether Rappaport has the required character and fitness. Furthermore, neither the letter nor the memorandum discloses the legal reasoning followed by the Deputy Secretary in reaching his decision to approve Rappaport's proposed acquisition. Thus, we have no way of knowing whether the Deputy Secretary made all the determinations he was required to make under Section 212(d).

Without this information, this Court is unable to effectively review the decision of the Deputy Secretary. Accordingly, it is ordered that this matter be remanded to the Deputy Secretary for the rendering of a decision which is consistent with this opinion.

ORDER

NOW, June 7, 1989, the decision of the Deputy Secretary of Banking, dated January 22, 1988, is vacated. This mat-

ter is remanded to the Deputy Secretary for the rendering of a decision which is consistent with the foregoing opinion.

Jurisdiction relinquished.

KALISH, J., did not participate in the decision in this case.